## Merchants Mutual Telephone Company *v.* Hirschman.

[No. 6,328. Filed February 16, 1909.]

1. Nuisance.—*Telephones.—Removal of, After Suit Filed.—Injunction.—Damages.*—Where a suit is filed to compel a telephone company to remove a pole standing in front of plaintiff's door, and for damages caused thereby, and after the filing of the suit such company removes such pole, the only question remaining is that of damages. p. 287.

2. Pleading.— *Complaint.— Nuisance.—Telephone Poles.—Particular Damage.*—A complaint alleging that defendant maintained a telephone pole "in close proximity and directly in front of the main entrance of" plaintiff's saloon, that the saloon stands on a street corner, that the door thereto opens upon such corner, and that such pole stands on the corner, sufficiently shows special damage and a nuisance to the plaintiff. pp. 288, 289.

3. Nuisance.—*Telephones.—Appropriation.—Remedies.*—Where a telephone company so maintains its poles as to constitute a private nuisance, the injured landowner is not restricted to the statutory remedy for the assessment of damages for lands appropriated to a public use. p. 288.

4. Damages.— *Permanent Injuries.— Nuisance.—Telephones.*—The placing of a telephone pole in such a position as to constitute a nuisance to the plaintiff, does not constitute a permanent injury to the land. p. 289.

5. Eminent Domain.—*Appropriation.—Assessment of Damages.—Remedies.*—Where a public-service company appropriates plaintiff's land to a public cause, plaintiff may maintain an action for damages, or may pursue the statutory remedy for an assessment of damages (§893 *et seq.* Burns 1901, §881 *et seq.* R. S. 1881). p. 289.

6. Pleading.— *Complaint.— Inferences.—* A complaint must state facts sufficient not only to suggest the inference desired, but to compel it. p. 289.

7. Pleading. — *Complaint. — Allegations. — Recitals.* — Averments that defendant maintains a pole at a certain place, and that the entrance to plaintiff's saloon is in the southeast corner of a certain building, are direct allegations and not recitals. p. 289.

8. Nuisance.—*Private.—Damages.—Telephones.*—The placing of a large telephone pole directly in front of the door of plaintiff's saloon, so as to interfere with his business, constitutes a particular damage which is not suffered by the community generally. p. 289.

9. PLEADING.— Complaint.— Injunction.—Damages.—Telephones.— Rights of Public.—Nuisance.—Where the purchaser of a lot erects a business house thereon, the door facing a large telephone pole, a complaint to compel the company to remove such pole and claiming no damages, is not bad because public rights had intervened or because the lot owner had not objected to the placing of such pole, or because of acquiescence in a nuisance, the limitation in such case being twenty years. p. 290.

10. VENDOR AND PURCHASER.—Construction of Buildings.—Telephone Poles.—The purchaser of a lot, in front of which a telephone company had erected a pole, is not compelled to erect his buildings with reference to such pole, no rights having been acquired by such company by grant or limitation. p. 290.

11. PLEADING.— Answer.— Nuisance.— Telephones.—In a suit to compel the removal of a telephone pole standing in front of plaintiff's door, an answer which fails to show that its location at that particular place was necessary to the operation of the system, is bad. p. 291.

12. TELEGRAPHS AND TELEPHONES.—Location of Poles.—Necessity.— Where a company removed a pole which constituted a nuisance to the plaintiff, it sufficiently appears that there was no public necessity for its location at that point. p. 291.

13. TRIAL.— Verdict.— Interrogatories.— Conflict.— Where the answers to the interrogatories to the jury are not in irreconcilable conflict with the general verdict, it prevails. p. 291.

14. NUISANCE.—Telephone Poles.—A telephone pole standing directly in front of the door of a business house, twenty-three inches from the steps, constitutes a private nuisance. p. 291.

15. NUISANCE.— Special Damage.— Proof Without Allegations Thereof.—In an action for damages for a nuisance, proof of special damages is admissible without any special allegations thereof. p. 292.

16. EVIDENCE.—Exclusion.—Objections.—Changing on Appeal.—Objections to the admission of testimony cannot be urged, on appeal, unless they were presented in the trial court. p. 292.

17. EVIDENCE.—Exclusion.—Nuisance.—Telephone Poles.—Removal. —Effect on System.—The exclusion of evidence as to the effect upon the telephone system the removal of a certain pole would have, is not erroneous, where such pole constituted a nuisance. • p. 292.

18. NUISANCE.—Removal.—Objections.—Evidence.—Evidence tending to show losses which would be caused by the removal of a nuisance is not admissible on behalf of defendant. p. 293.

19. EVIDENCE.—Permission of City to Place Telephone Poles.— Nuisance.—Evidence of a franchise from the city to erect telephone poles in the streets, and that the city officers directed the location of such poles, is not admissible in an action by a lot

owner to compel the removal of one which is a private nuisance to him.  p. 293.

20. EVIDENCE.—*Impeachment.—Interest.*—It is proper to show, in impeachment, that a witness for defendant company, prior to the trial, said that he must catch a car because the company had a case and if he did not "side in" with the company he would lose his job.  p. 294.

21. TRIAL.— *Instructions.— Nuisance.— Telephone Poles.*— Instructions requested stating that a telephone pole directly in front of the door of a business house did not constitute a nuisance to the owner, were properly refused.  p. 294.

22. TRIAL.—*Instructions.—When Shown to be Harmless by Interrogatories.—Nuisance.—Telephone Poles.—Damages.*—Where instructions outlined the damages which might be caused by reason of the cross-arms and wires on a telephone pole, and for obstruction to the egress from, and ingress to the plaintiff's house caused by such pole, alleged errors therein are rendered harmless, where the answers to the interrogatories to the jury show that no damages were given therefor.  p. 294.

23. TRIAL.— *Instructions.— Nuisance.— Definition.*— Instructions that a nuisance consists of an annoyance, and signifies such a use of one's property, or course of conduct as trangresses upon the just restrictions upon the use of property and the conduct of business which the law imposes, and that a private nuisance is one affecting a single individual, or a certain number of persons, in the enjoyment of some private right, are not erroneous.  p. 295.

24. TRIAL.—*Instructions.—Nuisance.—Question for Jury.*—An instruction submitting to the jury the question whether a telephone pole maintained in front of the door of a saloon constituted a nuisance, is proper.  p. 295.

25. TRIAL.—*Instructions.—Nuisance.—Interference with Comfortable Enjoyment.*—An instruction that because frontagers have no right of damages for the erection of a telephone pole in the street they are not prevented from recovering damages where the pole is so maintained "as to interfere with the comfortable and reasonable enjoyment of the premises," is not erroneous.  p. 296.

26. TRIAL. — *Instructions. — Cities. — Franchises. — Telephones. — Streets.—Sidewalks.*—An instruction that neither the legislature, nor the common council of a city, has the right to authorize the substantial impairment of property or interfere with the beneficial enjoyment. thereof outside of that taken for streets, is not erroneous on the ground of excluding the city from the sidewalks, since streets include sidewalks.  p. 296.

27. TRIAL.—*Instructions.—Special Damages.—Interrogatories Rendering Harmless.*—Instructions as to special damages are rendered harmless, where the answers to the interrogatories to the jury show that no such damages were awarded.  p. 297,

28. APPEAL.—*Remittitur.*—*Judgment.*—Where the judgment is too large and the excess can be definitely determined, the judgment will be affirmed conditionally upon the filing of a remittitur for the excess. p. 297.

From Laporte Circuit Court; *John C. Richter,* Judge.

Suit by Max Hirschman against the Merchants Mutual Telephone Company. From a judgment for plaintiff, defendant appeals. *Affirmed conditionally.*

*Frank E. Osborn, William A. McVey, Lee L. Osborn* and *Edwin J. Bower,* for appellant.

*Ellsworth E. Weir, Philo Q. Doran* and *Arthur Irwin,* for appellee.

COMSTOCK, P. J.—The defendant is a corporation owning, operating and controlling a telephone system in Michigan City, Indiana, and vicinity, and the plaintiff is the owner of certain property in said city, located on the north side of Fifth street and adjoining an alley on the east. The plaintiff is the owner in fee to the center of the street, subject to the easement of the public therein. Situated upon said real estate adjoining the line of said street and alley is a two-story brick building occupied by the plaintiff as a place of business and residence—the lower floor being used for a saloon. The main entrance to the saloon is in the southeast corner of said building, and opens at the point where the alley intersects Fifth street.

After setting out the facts above stated, it is alleged, in substance, that the defendant has erected and now maintains a large pole on the premises of the plaintiff at the intersection of said street and alley; that the pole is in close proximity to and directly in front of the main entrance to said saloon, thereby obstructing the view from said building, and the ingress to and egress from said saloon, and otherwise interfering with the reasonable and beneficial use and enjoyment of said premises; that attached to said poles are divers cross-arms, which extend over and upon said premises, and that each carries a number of wires, operated

by and belonging to said defendant, running north and south over and upon the east part of said premises; that the maintenance of said cross-arms and wires over and upon the premises of the plaintiff is and always had been without the consent or license of the plaintiff, and without compensation; that on or about September 1, 1902, the plaintiff notified and requested the defendant to remove said pole and wires, but the defendant neglected and refused, and still neglects and refuses, to move said pole, to the plaintiff's damage, etc. The second paragraph of amended complaint, in addition to the allegation set out in the first, alleges that the maintenance of said pole, wires and cross-arms constitutes a continuing nuisance and is a detriment to the property of the plaintiff, and that he is without adequate remedy at law. Upon the foregoing facts the plaintiff seeks to have said alleged nuisance abated and to recover damages. A separate demurrer for want of facts was overruled to each paragraph of amended complaint, and defendant answered (1) in general denial; (2) that it is a corporation operating under a franchise granted by the common council of Michigan City for the construction and operation of its lines; that the pole in question was erected, prior to the time plaintiff became possessed of said lot, under the authority and franchise aforesaid; that said pole, cross-arms, etc., were a part of and necessary to the successful operation of its said system. A demurrer was sustained to the second paragraph of answer. The cause was tried by jury, resulting in a general verdict in favor of plaintiff, and assessing his damages at $240. With the general verdict the jury returned answers to interrogatories, and, over motions for judgment *non obstante veredicto* and for a new trial, judgment was rendered on the verdict in favor of plaintiff. These rulings are assigned as error.

1. As it is disclosed by the record that said pole has been removed since the filing of this suit, the only question for consideration is that of damages.

The appellant insists that the demurrer should have been sustained to the first paragraph of the amended complaint on the ground that the theory of the amended complaint is that said pole as located constituted a nuisance. It is also insisted (1) that, in the absence of an averment to the contrary, the presumption would be that said pole was erected and maintained with the consent and permission of the common council; (2) that the reasonable use of the streets of a city by a telephone system is not a new and additional servitude for which the abutting owner is entitled to compensation; and (3) that the complaint does not show by direct allegation that the appellee suffered injuries beyond other property owners whose lands abutted on the highways of Michigan City, or in anywise differing from that suffered by the community at large. The presumption, which it is claimed arises from the absence of such averments, does not render the complaint bad. Whether the particular use of this street is a reasonable one is a question of fact. The allegations that ''said pole is in close proximity and directly in front of the main entrance of said saloon, thereby obstructing the view from said building and the ingress to and egress from said saloon, and otherwise interfering with the reasonable and beneficial use and enjoyment of said premises,'' is, when taken with the other allegations, sufficient to charge that the appellee is peculiarly damaged and in a way not suffered by other members of the community at large.

It is claimed, further, by appellant that if the pole was so set as to constitute an additional burden on appellee's land, then so setting it was an appropriation of appellee's land for which he would be entitled to resort to his statutory remedy for the assessment of damages. §893 et seq. Burns 1901, §881 et seq. R. S. 1881. If the pole was so set as to be an additional burden, it would not change the character of the act in so setting it from

what would, in law, be a nuisance to an appropriation of the property.

The pole in question, located as it was, was not a permanent injury to appellee's premises. *Muncie Pulp Co. v. Keesling* (1906), 166 Ind. 479. If it were an appropriation appellee would have his choice of remedies, either for damages or under the statute. §893 *et seq., supra.*

Referring to the recognized rule of pleading—that allegations must be stronger than merely to suggest an inference, that they must be so strong as to enforce the inference which is necessary (*Erwin* v. *Central. Union Tel. Co.* [1897], 148 Ind. 365)—appellant asserts that the allegation "that said pole is in close proximity to and directly in front of the main entrance to said saloon, thereby obstructing the view from said building, and the ingress to and egress from said saloon," etc., is indirect and does not show, nor does the complaint show, that the appellee suffered injury beyond other property owners whose lands abutted on the highways of Michigan City, or in anywise differing from that suffered by the community at large.

The allegations set out should be considered with other averments set out, viz., "that said defendant has erected and now maintains a large pole at the point on the premises of this plaintiff where said alley intersects said Fifth street," and "that the main entrance to said saloon is in the southeast corner of said building, said entrance being at the point where said alley intersects said Fifth street." These allegations are not made by way of recital. They are positive averments.

The appellee has the right to use his building for business purposes. The injury to appellee—the interference with the free access of the public to his place of business—is not suffered by the public generally.

The injury to appellee from loss of business, depreciating the rental value of his property, is peculiar to him. *Coburn* v. *New Tel. Co.* (1901), 156 Ind. 90, 52 L. R. A. 671; *Terre Haute, etc., R. Co.* v. *Bissell* (1886), 108 Ind. 113; *Waltman* v. *Rund* (1884), 94 Ind. 225; *Adams* v. *Chicago, etc., R. Co.* (1888), 39 Minn. 286, 39 N. W. 629, 1 L. R. A. 493, 12 Am. St. 644.

Appellant argues that the amended second paragraph of complaint is bad, because it states no amount of damages, but asks that appellant be enjoined from maintaining its pole as located, and that, appellee's grantor, having deferred action until the rights of the public have intervened, he (appellee) cannot maintain an action for either ejectment, injunction or successive actions for trespass. If this paragraph states facts sufficient to entitle appellee to an injunction, it is not bad for failure to ask damages. The rights of the public in a telephone system cannot prevent the removal of a pole located in an improper place. The location of the pole did not affect appellee's grantor. It became a nuisance to appellee after he had bought the ground and constructed his building. There was no acquiescence upon the part of said grantor in the condition following the construction of the building. The doctrine of acquiescence does not apply to a nuisance unless it has continued for twenty years. *Sherlock* v. *Louisville, etc., R. Co.* (1888), 115 Ind. 22; *Indiana, etc., R. Co.* v. *Allen* (1888), 113 Ind. 581. The cases cited by appellant are not in conflict with this proposition.

When appellee purchased the land, the pole was erected. He was not bound to build with reference to the pole. No fixed legal rights have been acquired, either by lapse of twenty years or by grant. *Campbell* v. *Seaman* (1876), 63 N. Y. 568, 584, 20 Am. Rep. 567.

Appellant argues that the court erred in sustaining the demurrer to the second paragraph of answer. The ruling was

correct, for the reason, if for no other, that it does not allege that the location at the particular place was necessary to the successful operation of the system. No rights of the public could have intervened to make its continuance in that location necessary.

The pleadings and evidence show that after the commencement of this suit, but before trial, the pole was removed. It thus appears that its maintenance at that place was not necessary.

The court did not err in overruling appellant's motion for judgment on the answers to interrogatories notwithstanding the general verdict, for the reason that there is not an irreconcilable conflict between them and the general verdict.

The first two reasons for a new trial raise the question of the legal sufficiency of the evidence to support the verdict. It is argued, "(1) that the facts disprove the allegations of the complaint that the pole obstructed the ingress to and egress from the saloon; (2) that, granting that the pole somewhat obstructed such ingress and egress, such obstruction did not materially differ from that caused by such poles as are ordinarily set in the highways of a city." The pole was twenty inches in diameter, and was located seven or eight inches east of the east line of the lot, eighteen inches north of the south line of the lot, and thirty-three inches from the steps, in line with the center of a doorway five feet eight inches wide, situated in the corner of the building, and six feet from the doorway itself. The location occasioned an injury to appellee different from that sustained by the community at large. The obstruction to the view, ingress and egress, and diminution in rental value were peculiar to appellee.

It is also claimed that the damages assessed are excessive. Suit was commenced May 13, 1904. Appellee moved into the building March 13, 1903. The evidence showed that the rental value was diminished $10 per month. The ap-

pellee was damaged only after he began the occupation of the building. This was for fourteen months. The assessment—$240—was therefore excessive in the sum of $100. Witnesses Kruger and Barnes testified as to the rental value with and without the alleged nuisance.

It is insisted that the diminution of rental value is special damage, and not being alleged cannot be proved. It was held in *Muncie Pulp Co.* v. *Keesling, supra,* that where the injury is of a temporary nature, the diminution of the rental value is recoverable without special allegation thereof.

It is further urged that the questions asked said witnesses covered too much in point of time. Appellee calls our attention to the fact that this was not one of the grounds of appellant's objection before the trial court. It will not therefore be considered.

Complaint is made of the court's refusal to allow the appellant to ask of the witness Crumm, "What effect, if any, would the interruption of the pole have upon the general system of the telephone company?" and refusal to permit said witness to answer said question and testify "that the interruption of the pole in any manner, by way of removal, would affect and interrupt the general system and business of the defendant and the public at large." A trespasser cannot defend upon the ground that the removal of the nuisance complained of would interfere with his business. The question does not call for the effect upon the public at large.

The tenth reason for a new trial was the refusal to permit the following question and answer: "Mr. Crumm, you have testified to the taking down of this pole in January, 1906, you may tell the jury what change in the system of the Merchants Mutual Telephone Company was made at that time? A. The change made in the system enabled the defendant company to remove the pole in question with-

out in any manner interrupting the rights of the public, which had intervened."

The thirteenth, fifteenth, sixteenth, seventeenth, eighteenth and nineteenth causes for a new trial relate, respectively, to the refusal of the court to permit appellant to prove over what territory appellant's telephone system extended, under what system the company was operating, that it was changed to the manual system, that it would have stopped the service of the telephone company if the pole had been removed before the system had been changed, how many telephones were in operation connected with the lines which were attached to and running across the pole in question in the year 1903, when Mr. Hirschman was erecting the building on this lot; and that there were 250 telephones connected with the lines running over that pole. There was no error in these rulings. Neither the system, the extent of the system, nor change of system was material. Mere interference with business is not ground for the refusal to remove a nuisance. One maintaining a nuisance cannot reasonably object to its removal. The number of wires attached to or connected with this pole was not material. This would not change the character of the objectionable location.

The fourteenth, twentieth, twenty-first and twenty-second causes for a new trial have reference to the refusal of the court to permit appellant to prove that the pole was erected pursuant to its franchise, and in the precise spot selected by the street commissioner and the city engineer. Neither the city nor the officers thereof could grant the right to appellant to place its pole in such place or manner as to interfere with the enjoyment of private property.

It is claimed that the court erred in permitting the impeachment of appellant's witness Howe by Richard W. Howard, upon an immaterial and collateral matter—whether

Howe said: "I hope that I won't miss that car, because the company has a case in court this morning, and if I don't side in with the company I will lose my job." The foundation for impeachment was properly laid. The subject under discussion between Howe and Howard was the testimony which Howe was about to give. It was proper matter to go to the jury for the purpose of showing his interest and solicitude in giving his testimony. There was no error in this ruling.

The twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh and twenty-eighth causes for a new trial relate to the refusal to give instructions requested by appellant. They were framed upon the theory that it was the duty of the court, upon the undisputed facts, to hold as a matter of law that so far as the pole itself—saying nothing of the cross-arms and wires—was not a nuisance, appellant was within its rights in its maintenance. These instructions were framed upon an incorrect theory and were properly refused.

It is insisted that the first instruction given is erroneous because it attempted to state the issues; that it was misleading for the following reasons: "(a) If the obstruction of the ingress or egress were an issue under the pleading (a very doubtful proposition), it ignores it; (b) it stated that the defendant crossed plaintiff's roof, something not alleged in the complaint; (c) it stated that said cross-arms and wires interfered with the reasonable and beneficial use and enjoyment of the plaintiff's property, which is not alleged in the complaint." Among other things, this instruction stated: "That said pole is in close proximity to, and directly in front of, the main entrance to appellee's place of business, and obstructs the view of said building on both the upper and lower floors, and interferes with the reasonable use and enjoyment of the same." The question of ingress and egress is included in the foregoing. The fact that the jury in its answers to interrogatories found

that no damage was suffered by and on account of the wires and cross-arms shows it was not misled.

The second instruction given and which is objected to, reads: "A nuisance is, in contemplation of law, literally an annoyance, and signifies such a use of property or such a course of conduct as, irrespective of actual trespass against others, or of malicious or actual criminal intent, transgresses the just restriction upon the use of property or the conduct of business due to the limitation which the law imposes upon the enjoyment of the property where it interferes with the rightful enjoyment of the property of others. A private nuisance is one that affects a single individual, or a determinate number of persons in the enjoyment of some private right in contradistinction to the public." It is claimed to be erroneous for the following reasons: That the case upon the proper construction of the evidence and pleadings involves no issue of nuisance; that if it did, it was not such a one as pertained "to course of conduct" referred to in the instruction, and by reason of its generality it was misleading.

In 21 Am. and Eng. Ency. Law (2d ed.), 691, it is said: "Taking into consideration the peculiar circumstances of each particular case passing directly upon the point, the clear weight of authority seems to be that (with the exception of a nuisance *per se,* the existence or nonexistence of which is a question of law purely) the court must instruct the jury as to what constitutes a nuisance in law, and the jury must determine whether or not the particular thing, act, omission, or use of property complained of, is in fact a nuisance." The jury was instructed in harmony with the statement of law just given. We cannot admit that the objections are well taken.

Instructions two and seven taken together are objected to as presenting an issue not involved in the case. Sufficient mention has been made of instruction two. Instruction seven told the jury that whether the

maintenance of the pole was a nuisance was a question to be determined by the jury from the evidence. The one instruction defined a nuisance, and the other told the jury to determine from the evidence whether the acts complained of constituted a nuisance.

Instruction three given, stated, in substance, that under the law the reasonable use of the streets of the city was not an additional servitude for which abutting owners were entitled to compensation; but the mere fact that the property owner has no right to recover damages for the erection of a pole in a street or highway of the city does not prevent the recovery of damages where the pole is so placed and maintained as to interfere with the comfortable and reasonable enjoyment of the premises. This instruction is said to be erroneous because of the use of the word "comfortable." The statute defines "a nuisance as an interference with the free use of and comfortable enjoyment of one's property." The language used is substantially equivalent to the words of the statute. One of the definitions given by Anderson is: "That which annoys and disturbs one in possession of property rendering its ordinary use and occupancy physically uncomfortable to him." There was no error in giving this instruction.

The fourth instruction given recognizes the right of the legislature to delegate to a city the power to grant to telegraph and telephone companies the privilege of erecting and maintaining telegraph and telephone poles and wires upon its streets, but tells the jury that neither the legislature nor the common council has the right to authorize the substantial impairment of the beneficial enjoyment of property outside of that portion taken for the streets or highways; the supervision and control by the city being limited to that portion used by the public generally, and known as the street or highway. It is claimed that the instruction is erroneous because it excluded the city from the sidewalks. A street is a highway from property line to

property line. The instruction does not exclude the right to control the sidewalk. It gives the city control of that property taken for highways and known as streets and highways, and sidewalks are included in streets and highways.

Instruction eight, upon the subject of damages, is objected to for the reason of its statement of a cause which the complaint did not embrace. The special findings show, however, that the jury did not consider the particular ground referred to, and the rights of appellant could not have been prejudiced thereby.

We find no reversible error, excepting the amount of damages assessed. If within thirty days from this date appellee enters upon the proper record his remittitur of $100, the judgment will stand affirmed; otherwise it will be reversed, with instructions to sustain appellant's motion for a new trial.